## EMMA MARSCHNER *v.* AMERICAN HARDWARE CORPORATION ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, JS.

Argued October 13—decided December 21, 1954

*Milton Turkel,* for the appellant (plaintiff).

*Edward S. Pomeranz,* with whom was *William P. Aspell,* for the appellees (defendants).

DALY, J. The Superior Court dismissed the plaintiff's appeal from a finding and award of the workmen's compensation commissioner in favor of the defendant employer and its two defendant insurers. The plaintiff is the widow of the deceased, Otto Marschner. It was her claim that the deceased, as a result of his exposure to dust containing silica at the plant of the defendant employer, contracted an occupational disease known as silicosis and was totally disabled by it, that he required medical and hospital attention because of his condition and that he would have lived longer had he not contracted the disease. The defendants claimed that if the deceased suffered from silicosis it was of a minimal degree, that it did not arise out of and in the course of his employment and that it was not the cause of his death. Upon the plaintiff's appeal to this court, the question presented is whether the trial court erred in sustaining the commissioner's finding and award dismissing the plaintiff's claim.

The material facts found by the commissioner are as follows: The deceased was born in October, 1876, in Germany, and prior to coming to this country in 1926 had worked as a mason. He had almost reached the age of seventy-two at the time of his death on August 20, 1948. He had a contract of employment with the defendant employer which began approximately in September, 1926, and continued until October 23, 1947. For the first six months he worked in the yard, and thereafter he was at all times employed as a mason. His job entailed all of the usual work of a mason, namely, working with cement, concrete and brick, repairing floors and walls and relining furnaces with fire brick. At times the use of a pneumatic drill was required.

Fire brick and most concrete contain silica. Before

relining a furnace, the deceased would tear down and remove the old fire brick. Most of his mason work, however, was performed in the open air or in large factory rooms. Certain work undoubtedly raised some dust, but there was no extraordinary exposure to it. Masons rarely contract silicosis beyond a minimal or first stage. It is not generally recognized as a disease to which they are commonly subjected. The deceased was not exposed, in the course of his employment with the defendant employer, to more than a minimum amount of free silica.

The deceased consulted Dr. J. Kalett as his personal physician in 1944, approximately, and his condition was diagnosed as arteriosclerotic heart disease, angina pectoris. He again consulted Dr. Kalett in approximately October, 1947, and the discharge note from Dr. Kalett in the hospital record indicated that the examination at that time showed the usual findings of early cardiac insufficiency, there being some pulmonary congestion and moderate enlargement of the liver and one-plus peripheral edema. At that time a history was given of the deceased's having had an attack of precordial pain of somewhat longer duration than previous attacks. An electrocardiogram corroborated the diagnosis of anterior-wall myocardial infarction.

An x-ray examination of the chest of the deceased on October 16, 1947, by Dr. J. C. Larkin, radiologist, disclosed the following: "Films of the chest with laminographic study of the apex shows extensive infiltration into the right apex and also extending from the right hilus. The heart appears slightly enlarged. Laminographic study shows cavitation in the right apex. The trachea is pulled to the right side. Impression: I believe this to be an active pul-

monary tuberculosis with cavitation in right apex, extending up to the left hilus."

The deceased became totally disabled on October 23, 1947, and remained so until his death. On August 20, 1948, he suffered a very severe heart attack. He was admitted to the New Britain General Hospital at approximately 6 p.m. and was pronounced dead at approximately 6:55 p.m. The discharge diagnosis was acute coronary occlusion, coronary insufficiency, silicosis. All the material facts set out in the autopsy report of Drs. J. W. Dennis and Paul D. Rosahn, including the final diagnosis, clinical history, gross notes and microscopic notes, were found as facts.

The commissioner also found that at the time of death the deceased was suffering from anthracosilicosis, bilateral; that one of the most important indications of a possible deleterious effect of silicosis upon the heart is the enlargement of the right side of the heart; that the left ventricle wall of the deceased's heart measured 1.2 centimeters and the right ventricle wall 0.6 centimeters; that the enlargement or hypertrophy of the heart which was found at autopsy was on the left side, and not on the right side as would be expected if silicosis had advanced far enough to injure the heart or the main blood vessels leading to it; that the arteriosclerosis, especially of the coronary and renal arteries, the cardiac hypertrophy, especially on the left side, the scars of the kidneys, the old and recent infarcts of the myocardium, the mural thrombus in the left ventricle, the congestion of the liver, the hydrothorax on the left side and the fatty liver with portal fibrosis were not caused by the slight degree of silicosis from which the deceased suffered but were common signs of degenerative atheromatous changes which go with senescence.

Silicosis is not usually a direct cause of death. It may be secondary or subsidiary to the primary cause. Silicosis is caused by the inhalation of dust containing small particles of pulverized silica. Exposure to silica dust in indoor work is more likely to cause silicosis than exposure in outdoor work. Work on silica-bearing materials with a pneumatic drill is more likely to create dust containing fine particles of silica than work with hand tools. The deceased's silicosis was caused by silica dust. It was only minimal silicosis and was not disabling.

The commissioner concluded that the deceased's disability and death were due to a myocardial infarction resulting from degenerative changes in the heart, in its left ventricle, which in turn were due to the degenerative atheromatous changes which go with senescence; that the lung findings were due to very old, well-organized and healed bilateral pulmonary tuberculosis and minimal silicosis which did not enter into the etiology, course or outcome of the condition which resulted in death; that the dust exposure of the deceased, during the course of his employment, was inadequate to produce more than a minimal degree of silicosis; and that the minimal silicosis so produced played no part in his disability or death.

A medical expert called by the defendants gave testimony directly supporting the commissioner's conclusions. Two medical experts called by the plaintiff testified to the contrary. A finding or a conclusion of the commissioner cannot be held to be erroneous merely because it was based upon the opinion of one expert witness in opposition to that of two others. *Kulak* v. *Landers, Frary & Clark,* 120 Conn. 606, 608, 181 A. 720. In addition to the testimony, the commissioner had the benefit of the many ex-

hibits referred to. It was his province to accept the evidence which seemed to him to be credible and the more weighty. *Jadovich* v. *Collins Co.,* 109 Conn. 62, 66, 145 A. 25. The subordinate facts found by the commissioner do not logically compel the conclusion that the minimal amount of silicosis in the lungs of the deceased was a substantial factor in causing his death. Upon an appeal to the Superior Court from the finding and award of a compensation commissioner, the court may not retry the facts. It inquires into the facts merely to determine whether the finding and the award appealed from are unauthorized in law, irregular or informal, based upon a misconception of the law or of the powers or duty of the administrative tribunal, or so unreasonable as to justify judicial interference. *Manfredi* v. *United Aircraft Corporation,* 138 Conn. 23, 26, 81 A.2d 448; *Fiengo* v. *E. Vitale, Inc.,* 125 Conn. 559, 562, 7 A.2d 385. The trial court in the present case did not err in sustaining the commissioner's conclusions.

The plaintiff also claims that the court erred in failing to correct the finding, in overruling claims of the plaintiff, in refusing to recommit for further proceedings, in refusing to remand for further proceedings, and in refusing to remand with a direction to make an award in favor of the plaintiff. In disposing of the questions having to do with corrections of the finding, we must consider the function performed by the Superior Court and this court in relation to correcting a commissioner's finding. "The commissioner is the trier of the facts and his finding is of the same import as the finding of a trial judge. . . . 'Settling the credit of witnesses; weighing evidence; ascertaining the truth from conflicting testimony or incongruous evidential facts;'—is 'within the exclusive jurisdiction' of the commissioner.

His finding, in so far as it discloses facts so determined, which we ·designate subordinate facts, cannot be changed unless the record discloses that the finding includes matters found to be facts without evidence, or fails to include material facts which are admitted or undisputed facts." *Palumbo* v. *George A. Fuller Co.,* 99 Conn. 353, 355, 122 A. 63; *Harrison* v. *Armstrong Rubber Co.,* 138 Conn. 567, 568, 86 A.2d 722; Practice Book § 312. The trial court did not err in failing to correct the corrected finding and award, or in the other particulars claimed.

There is no error.

In this opinion the other judges concurred.